ROBERT F. KANE, ESQ. (State Bar No. 7l407)
LAW OFFICES OF ROBERT F. KANE
870 Market Street, Suite 1128
San Francisco, CA  94l02
Tel:  (4l5) 982-l5l0; Fax:  (415) 982-5821

PAUL COHEN (State Bar No. 148371))
SHIRLEY HOCHHAUSEN (State Bar No. 145619)
LEGAL AID OF MARIN
30 North San Pedro Road
San Rafael, CA  94903
Tel:  (415) 982-0230; Fax (415) 492-0947

Attorneys for Plaintiffs
JOANN R. OWENS and LARRY M. OWENS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN R. OWENS and LARRY M. OWENS,<br><br>    Plaintiffs,<br>vs.<br><br>BANK OF AMERICA, MARIX SERVICING, LLC, J.P. MORGAN MORTGAGE ACQUISITION CORP., RESIDENTIAL CREDIT SOLUTIONS, INC. and DOES 2 -50, inclusive,<br><br>    Defendants. | No.  11-CV-04580<br><br>**SECOND AMENDED COMPLAINT** |

COMES NOW Plaintiffs Joann R. Owens and Larry M. Owens and against defendants, and each of them, alleges as follows:

**INTRODUCTION**

1. Plaintiffs Joann R. Owens ("Joann") and Larry M. Owens ("Larry," collectively "Plaintiffs") are husband and wife who reside in Marin County.  They bring this action to enforce an agreement entered into with the Bank of America ("B of A") in October, 2009 to modify their home loans.  After entering into a modification agreement with the Owens, B of A sold the Owens' first mortgage to a group of investors at J.P. Morgan Mortgage Acquisition

Group ("J.P. Morgan") and arranged for the loan to be serviced by Marix Servicing LLC ("Marix"). B of A, Marix and J.P. Morgan have each refused to honor the loan modification between the Owens and the B of A and have instead instituted foreclosure proceedings through their agent, Quality Loan Service Corp ("Quality"). A trustee's sale is currently set for September 19, 2011.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the Defendants named herein because a substantial portion of the wrongdoing alleged in this complaint took place in the northern district of California and the Defendants regularly do business in the northern district of California.

3. This is an action for violations of the Equal Credit Opportunity Act ("ECOA") 15 U.S.C. §§ 1691 *et seq*. Further, Plaintiffs invoke this Court's diversity jurisdiction. Finally, Plaintiffs invoke the pendant jurisdiction of this Court to consider claims arising under state law. Jurisdiction is thus founded on 28 U.S.C. §§ 1331, 1332, and 1367.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial portion of the events and the acts and omissions giving rise to this complaint occurred within the northern district of California. The loan contracts between Plaintiffs and Defendant were made and to be performed and the obligations arose in the northern district of California.

**PARTIES**

5. Plaintiffs are a married couple with three children who reside in the northern district of California.

6. Plaintiffs are informed and believe and on that basis allege that Defendant B of A is a duly licensed Delaware corporation doing business in California.

SECOND AMENDED COMPLAINT

7. Plaintiffs are informed and believe and on that basis allege that Defendant Marix is a duly licensed Delaware limited liability company doing business in California.

8. Plaintiffs are informed and believe and on that basis allege that Defendant J.P Morgan is a duly licensed Delaware corporation doing business in California.

9. Plaintiffs are informed and believe and on that basis allege that Defendant Residential Credit Solutions, Inc. is a duly licensed Delaware corporation doing business in California.

10. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1 through 50 are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe that the Doe Defendants are residents of California, are doing business in California, or did business in California during the times relevant to this action, and that each Doe Defendant is legally responsible in some manner for Plaintiffs' damages or injuries.  Each fictitiously named Defendant is in some way liable to Plaintiffs, or claims some right, title, or interest in the subject property that is subsequent to and subject to the interest of Plaintiffs, or both.  Plaintiffs will ask leave from the Court to amend their Complaint and insert the true names of the Doe Defendants at the time that Cross-Plaintiffs discover their names.

**GENERAL ALLEGATIONS**

11. Plaintiffs are informed and believe and on that basis allege that each Defendant was the agent and/or employee and/or principal of each of the remaining Defendants are or were otherwise related, and in doing the acts herein alleged, were acting within the course and scope of such agency and employment, and/or with the knowledge, consent, or authority of each of the remaining Defendants and/or with knowledge of their acts and/or wrongdoing.  By virtue of the foregoing, each Defendant had knowledge and/or constructive notice of, and/or authorized and

consented to the acts of each of the other Defendants, and/or ratified the wrongful acts of each of the other Defendants, as herein alleged, by among other things, retaining and sharing in the benefits of such acts.

12. Plaintiffs are informed and believe and on that basis allege that Defendants, and each of them, knowingly and willfully entered into an agreement or agreements and/or conspiracy or conspiracies with the other Defendants to do some or all of the acts herein alleged.

13. Plaintiffs are informed and believe and on that basis allege that the Defendants, and each of them, negligently employed and retained employees and/or agents and failed to properly supervise, train, direct and/or control their actions.

14. Plaintiffs are informed and believe and on that basis allege that the Defendants and each of them aided and abetted one another in committing the acts set out herein.

15. On or about September 2006, Plaintiffs sold their home of 18 years and bought a home at 220 Johnstone Drive in San Rafael, California ("Home") the property that is the subject of this action.

16. Like many home loans made at that time, the loan package consisted of two loans. The loans were in the total amount of $765,000. Approximately a year later at the suggestion of a real estate agent, they refinanced through American Brokers Conduit. In October of 2008, B of A acquired these loans.

17. Plaintiffs made mortgage payments on their Home until October 2009 when Larry's commission-only income as a mattress salesman dropped as a result of the softening economy. Both Larry and Joan continued to work full time and cut their household expenses, but Larry's income continued to be greatly reduced, making it impossible for them to keep up

the payments on their Home.

18. Beginning in October 2008, Plaintiffs reached out to B of A in an attempt to modify their mortgages and were required to provide various information to B of A. B of A was eventually responsive and Plaintiffs worked with Sue Rogers ("Rogers"), the Processor/Mortgage Specialist assigned by B of A, and reached an agreement to modify the loan terms on October 6, 2009. B of A offered a modification of the first loan fixed at 40 years at 4.125% with a $2,727.12 monthly payment effective as of December 1, 2009.

19. Pursuant to the agreement reached with Rogers, sometime after October 6, 2009, Plaintiffs received a written modification offer containing the terms described above ("Offer"). Time of acceptance was not declared to be of the essence nor was it a material term of the Offer. In fact, after receiving the written modification offer Plaintiffs received a voicemail message from Rogers saying that she needed to talk to Plaintiffs before they returned the signed agreement. Despite repeated attempts, Plaintiffs were unable to reach Rogers and on October 19, 2009 they signed and returned the written modification agreement.

20. The modification carried fees of $1,097.85 as well as incidental costs including notary fees and overnight mail. As instructed by B of A, Plaintiffs accepted the Offer and sent B of A a check for modification fees in the amount of $1,097.85 when they returned the agreement to the B of A. B of A confirmed receipt of payment of the modification fees on October 24 and they were posted as such to Plaintiffs' account on November 2, 2009. These fees were apart from and in addition to the amounts owed to B of A as mortgage payments and would not have been paid by the Plaintiffs except as costs incident to the modification of the Plaintiffs' loan as required by B of A.

21. In addition to the modification fees and in accord with the modification agreement, Plaintiffs paid, and B of A accepted and posted the modified loan payments on the Plaintiffs' account on December 11, 2009, January 20, 2010 and February 22, 2010. Thereafter, Plaintiffs received a statement from B of A setting forth their original payment amount which prompted Plaintiffs to contact B of A. B of A informed Plaintiffs that their modification had been "lost". and that they should "start again"; this time seeking a modification pursuant to the "Making Home Affordable Program" ("HAMP"). Believing that they had no choice, Plaintiffs agreed to apply for HAMP modification.

22. In June 2010, Plaintiffs completed an application for a HAMP modification. After determining a borrower's eligibility, HAMP directs a servicer to take a series of steps to adjust the monthly mortgage payment to 31% of a borrower's total pretax monthly income. First by reducing the interest rate to as low as 2% and, if necessary, extending the loan term to forty years and then, if necessary, forbearing a portion of the principal until the loan is paid off and foregoing interest on that portion of the loan. A servicer may also forgive principal under HAMP before any modification is made in order to achieve the target monthly amount. This is especially useful in instances such as Plaintiffs' loan where the value of the property is considerably less than the face value of the loan.

23. B of A processed and approved Plaintiffs' HAMP modification in December 2010. They now offered a trial modification. The new modification had terms that were less favorable than the earlier modification and Plaintiffs were concerned about being able to make the payments. Plaintiffs immediately notified B of A that they wanted the benefit of the modification agreement that they had entered into in 2009.

SECOND AMENDED COMPLAINT

6

24. Plaintiffs are informed and believe that the foregoing conduct of B of A is consistent with B of A's pattern and practice of enticing delinquent borrowers to enter into modification agreements which are designed to give B of A fees and payments they would not otherwise receive and then they refuse to enter into permanent modifications.

25. Plaintiffs are informed and believe that in early January 2011, B of A sold Plaintiffs' first mortgage loan to a group of investors at J.P. Morgan and learned that Marix had become the servicer of the loan. Plaintiffs are further informed and believe that the second loan on the Home is still owned by the B of A.

26. Plaintiffs are informed and believe that J.P. Morgan and Marix, the loan servicer for J.P Morgan, were aware at the time that they bought the Owens loan that the loan had been modified and that the contract of modification had been performed for a period of time and have nonetheless refused and continue to refuse to honor the modification entered into by Plaintiffs and B of A on the grounds that Plaintiffs did not timely sign the 2009 modification agreement.

27. Notwithstanding the foregoing, J.P. Morgan and Marix decided to go forward with the foreclosure unless B of A admitted its mistakes in processing the modification. Although B of A admitted errors regarding the handling of the modification but then claimed for the first time that it was not valid due to the late signature dates.

28. On or about May 20, 2011, a Notice of Default was recorded, beginning the process that will result in the foreclosure of Plaintiffs' Home. At this time, Larry suffered a heart attack and on May 24th has quadruple bypass surgery.

29. On or about August 23, 2011, a Notice of Trustee's sale was recorded that set the date of the foreclosure sale of Plaintiffs' Home for September 19, 2011. Plaintiffs have

expended moneys to prevent the foreclosure sale from going forward, including the filing of this action.

### FIRST CAUSE OF ACTION
(Breach of Contract)

30. Plaintiffs reallege and incorporate by reference herein, each and every allegation contained in the prior paragraphs of this Complaint.

31. Plaintiffs timely responded to B of A's Offer as any delay was not of the essence of the offer and immaterial as B of A's representative advised Plaintiffs not to return the document until she talked with them and her subsequent unavailability.

32. To the extent that the timing of the acceptance was material, Plaintiffs paid consideration in conjunction with their acceptance of the modification agreement in addition to the amounts owed on the subject mortgage as requested by B of A. B of A accepted this payment and posted it to the Plaintiffs account as a modification fee payment.

33. Beginning in December 1, 2009, Plaintiffs made all payments required under the written agreement to modify the loan pursuant to the terms set forth in paragraph 18 above and all payments were accepted, retained and posted to Plaintiffs' account.

34. Plaintiffs have performed all conditions, covenants and promises required by them to be performed.

35. On or about March 2010 B of A breached the contract by refusing to continue to perform pursuant to the Loan modification.

36. As a result of the breach, Plaintiffs have been damaged in an amount to be proven at trial, but to the extent that damages are inadequate, cannot be properly ascertained, and/or will be inadequate to compensate Plaintiffs for the detriment suffered by them, specific performance must be ordered.

37. Pursuant to the agreement, Plaintiffs are entitled to attorney fees.

## SECOND CAUSE OF ACTION
(Promissory Estoppel)

38. Plaintiffs reallege and incorporate by reference herein, each and every allegation contained in the prior paragraphs of this Complaint.

39. On or about October 2009, B of A promised, assured, and/or represented to Plaintiffs that they would modify the loans.

40. In so promising, assuring and/or representing to Plaintiffs, B of A knew or should have known that Plaintiffs would be reasonably induced to rely on B of A's promise, assurance and/or representation by advancing moneys to B of A.

41. Defendants paid modification fees and made mortgage payments pursuant to the modification agreement. Defendants have not performed any part of their promise, assurance or representation regarding the modification of the Loans.

42. As a result of Defendants' and each of their failure to perform according to their promise, assurance and/or representation which had been made to Plaintiffs, Plaintiffs have been damaged in an amount to be proven at trial, but to the extent that damages are inadequate, cannot be properly ascertained, and/or will be inadequate to compensate Plaintiffs for the detriment suffered by them, specific performance must be ordered.

43. Injustice can be avoided only by enforcing B of A's promise, assurance and/or representation completely.

## THIRD CAUSE OF ACTION
(Fraud)

44. Plaintiffs reallege and incorporate by reference herein, each and every allegation contained in the prior paragraphs of this Complaint.

45. On or about December 2009, B of A represented to Plaintiffs that it would modify the loans if Plaintiffs paid fees to obtain the modification and then made the modified monthly payments of $2,727.12. Included in the extra fees was the $1,097.35, together with

notary and federal express fees, as well as the modified payment.

46. B of A made these representations when it knew or should have known them to be false and with no intention to perform, with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in the manner herein alleged.

47. Plaintiffs justifiably relied upon B of A's representations.

48. As a result of the misrepresentations and concealments, Plaintiffs suffered emotional and physical distress at the prospect of losing their Home, all to Plaintiffs' damage in an amount to be proven at trial.

49. As a further result of the foregoing, Plaintiffs have and will continue to suffer financial damage, including but not limited to, medical costs, attorney fees and costs, potential moving and relocation expenses, rent, loss of valuable time, as a result of the potential loss of the Home in an amount to be proven at trial.

50. Said Defendants' and each of their, acts and omissions as alleged herein were done intentionally, maliciously and oppressively and with the intent to deceive and injure Plaintiffs thereby entitling Plaintiffs to punitive damages in an amount according to proof.

**FOURTH CAUSE OF ACTION**
(ECOA against Defendant Bank of America Only)

51. Plaintiffs reallege and incorporate by reference herein, each and every allegation contained in the prior paragraphs of this Complaint.

52. Plaintiffs are persons entitled to the notice provisions of the ECOA 15 U.S.C. §1601 *et seq.* and entitled to notice of adverse actions pursuant to 15 U.S.C. §1601(d). In addition to its other purposes ECOA requires creditors to notify applicants of action taken on their applications. 12 C.F.R. §202.1(b). Plaintiffs were entitled to such notice pursuant to 15U.S.C. §1601(d) and 12 C.F.R. §202.9 as they were encouraged by Defendant B of A to apply for credit in the form of a loan modification and denied such a modification or suffered the

termination of their account or or an unfavorable change in the terms of an account and the change did not affect all or substantially all of a creditor's accounts.

53. Plaintiffs made an application for a loan modification in October 2009 and were approved. After making payments on December 2009, January 2010 and February 2010 and on or about March 2010, at a time when they were current in their loan payments, Plaintiffs were informed by the B of A that their application was denied and/or that they could reapply for a modification. This constituted a termination of the modified loan account entered into in October 2009 and/or substantially changed the terms of their account.

54. Plaintiff never received any written notice of the reason for the adverse action taken by B of A in early 2010.

55. The failure of the Defendant, B of A, to provide Plaintiff any written statements regarding the denial of credit and failure of the defendant to provide the mandatory disclosures as required by 15 U.S.C. 1691(d)(2)(b) violate the Equal Credit Opportunity Act ("ECOA") and there is no requirement that Plaintiffs be a member of any protected class to state this type of violation of ECOA.

56. As a result of the alleged ECOA violations Plaintiffs have suffered actual damages in the loss of their rights to determine the basis of their credit denial, the loss of the credit itself, humiliation, fear, embarrassment and physical harm.

57. As a result of the above described violation of the ECOA, Defendant, B of A, is liable to the Plaintiff for actual damages pursuant to 15 U.S.C. 1691(c)(a), for punitive damages in the amount of $10,000 pursuant to 15 U.S.C. 1691(c)(b) and for attorneys fees and costs pursuant to 15 U.S.C. 1691(c)(d).

**FIFTH CAUSE OF ACTION**
**(Negligence)**

58. Plaintiffs reallege and incorporate by reference herein, each and every allegation

contained in the prior paragraphs of this Complaint.

59. At all relevant times herein, Defendants, and each of them, owed a duty to Plaintiffs to exercise reasonable care so as to not cause them harm.

60. Defendants, and each of them, were actively careless in acting in the manner set forth above in that they actively enticed Plaintiffs into paying additional fees to modify their loan and then failed to abide by their promises and to properly secure documents provided by Plaintiffs to Defendants, and each of them, at their specific request.

61. As a direct and proximate result of Defendants', and each of their negligence, Plaintiffs have suffered foreseeable injuries and damages as set forth above, in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
(Unfair Business Practice)

62. Plaintiffs reallege and incorporate by reference herein, each and every allegation contained in the prior paragraphs of this Complaint.

63. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, committed acts of unfair business practices, as defined by the California Business and Professions Code sections 17200 et seq. and 17500 by engaging in practices which include but are not limited to the acts and practices alleged above and further including, but not limited to, promising modifications and then declining to perform and compelling Plaintiff's to apply for further and less beneficial modifications in a "Bait and Switch" manner and violating ECOA.

64. Plaintiffs are informed and believe and thereon allege that Defendants' practices, as alleged above, constitute unlawful, unfair and fraudulent business acts or practices within the meaning of California Business and Professions Code sections 17200 and 17500.

65. As a result of Defendants' wrongful conduct as alleged above, Plaintiffs are entitled to restitution and disgorgement of moneys obtained by Defendants, as well as, an award

of attorney fees pursuant to California Code of Civil Procedure Section 1021.5.

**SEVENTH CAUSE OF ACTION**
(Declaratory Relief)

66. Plaintiffs reallege and incorporate by reference herein, each and every allegation contained in the prior paragraphs of this Complaint.

67. An actual controversy has arisen and now exists between Plaintiffs and Defendants, and each of them, as described above, including each party's respective rights and obligations with respect to the Loans. Plaintiffs claim that they are entitled to the promised loan modification and Defendants deny that Plaintiffs are entitled to the promised Loan modification. Accordingly, a declaration of each party's respective rights is needed.

**PRAYER**

WHEREFORE, Plaintiffs pray judgment, in excess of $75,000, as follows:

1. For damages according to proof at trial;

2. For punitive damages according to proof at trial;

3. For specific performance;

4. For declaratory relief;

5. For injunctive relief to stop the foreclosure of Plaintiffs' Home;

6. For an injunction against unfair business practices and disgorgement;

7. For costs of suit, including reasonable attorney fees; and,

8. For such other further relief as the Court may deem proper.

Dated: November 13, 2012         LAW OFFICES OF ROBERT F. KANE
                                 LEGAL AID OF MARIN

                                 By: s/Robert F. Kane
                                 ROBERT F. KANE
                                 ATTORNEYS FOR PLAINTIFFS
                                 JOANN R. OWENS AND LARRY M. OWENS

DEMAND FOR JURY TRIAL

Plaintiffs Joan R. Owens and Larry M. Owens hereby demand a jury trial in the above entitled action.

Dated: November 13, 2012     LAW OFFICES OF ROBERT F. KANE
LEGAL AID OF MARIN

By: *s/Robert F. Kane*
ROBERT F. KANE
ATTORNEYS FOR PLAINTIFFS