**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANN R. OWENS AND LARRY M. OWENS,<br><br>    Plaintiffs,<br><br>    vs.<br><br>BANK OF AMERICA, N.A., *ET AL.*,<br><br>    Defendants. | **Case No.:** 11-cv-4580-YGR<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION** |

Plaintiff Joanne R. Owens and Larry M. Owens ("Plaintiffs") have filed their Motion for Reconsideration and For Leave To File Proposed Amended Complaint Or Set Hearing (Dkt. No. 136). Defendant Bank of America, N.A. ("BANA") filed its opposition to the Motion on August 13, 2013. (Dkt. No. 138).

Plaintiffs ask the Court to reconsider of this Court's April 30, 2013 Order (1) Denying In Part And Granting In Part Motion To Dismiss of Defendant Bank of America; and (2) Denying In Part And Granting In Part Motion To Dismiss As To Defendants J.P. Morgan Mortgage Acquisition Corporation, Marix Servicing, LLC, and Residential Credit Solutions. (Dkt. No. 126), which dismissed their fraud, negligence, and Equal Credit Opportunity Act ("ECOA") claims against BANA. They also seek to amend the complaint to add two additional claims: one for intentional infliction of emotional distress against BANA and one for violation of the federal Fair Debt Collection Practice Act ("FDCPA") against Marix.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** the Motion for Reconsideration and to amend the Second Amended Complaint.

## I. RECONSIDERATION BASED UPON NEW FACTS

In support of their request for reconsideration of dismissal of their claims, Plaintiffs offer declarations filed in the multi-district litigation entitled *In re: Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, MDL No. 2193 (D. Mass.). Those declarations of former BANA employees indicate that BANA offices in North Carolina, Texas, and New Jersey engaged in a pattern of delay and unfounded rejection with respect to HAMP modification applications, in part to convince applicants to accept higher rate, internal refinancing with BANA. (*See* Dkt. No. 137, Declaration of Robert Kane, Exh. 1 at ¶ 8.) They also aver that BANA did not process payments received and told customers they had not received payments or paperwork when they actually had. (*See* Kane Dec., Exh. 1-5.)

Plaintiffs argue that such policies and practices support their claims for fraud and negligence against BANA. The Court is not persuaded by this argument. Leaving aside questions of whether these declarations are "new facts" that could not have been presented previously, or are admissible in these proceedings, Plaintiffs have not demonstrated that they have any bearing on their proposed claims here. First, the declarations concern HAMP loan modifications that were denied by a number of BANA offices in other parts of the country. The practices discussed therein, while certainly concerning, do not affect the allegations by Plaintiffs here:

- a (non-HAMP) loan modification offer extended to Plaintiffs in October 2009 with a seven-day acceptance window;
- Plaintiffs' late return of their acceptance after the seven days had lapsed;
- BANA's acceptance of an alleged "mortgage contribution fee" and three loan payments in the modified amount thereafter;
- BANA's notification that the original modification offer was "lost," and extension of a HAMP modification offer to Plaintiffs, which they rejected.

(SAC ¶¶ 18-21.) There are no allegations of improper denial of a HAMP modification or failure to credit payments in the Second Amended Complaint or Proposed Third Amended Complaint. Based upon the allegations of the SAC and the matters judicially noticeable, the Court previously determined that the issue to be resolved was whether Plaintiffs' late-acceptance of BANA's

1   October 2009 modification offer was waived by BANA because it accepted additional
2   consideration for the modification beyond other monies already owed by Plaintiffs.

3   More importantly, Plaintiffs' Proposed Third Amended Complaint ("PTAC"), submitted
4   with the Motion for Reconsideration, does not reflect any new allegations based upon these newly
5   discovered facts in the MDL. Instead, the PTAC submits new allegations about the Plaintiffs
6   themselves. For instance, the PTAC now offers allegations that:

- At the end of October 2009, Plaintiffs received a letter from BANA "welcoming" them and assigning them a new account number for the modified loan;
- In a phone conversation with a BANA representative in December 2009, Plaintiffs were assured that a bill showing the un-modified loan amount and their loan in arrears was an error, that Plaintiffs' loan had been modified but the files were not yet updated, and that Plaintiffs should "ignore" the bill.
- In a phone call with a BANA representative in February 2010, after receiving another statement showing an unmodified amount, Plaintiffs were again instructed to ignore the statement and reassured that the modification was effective.

(PTAC ¶¶ 1-3, compare SAC ¶¶ 18-21.)

These allegations are entirely new and differ significantly from the allegations and arguments previously made by Plaintiffs. Plaintiffs offer no reason that these allegations, uniquely within their own knowledge, could not have been made previously, had they acted with diligence. In short, there is simply no relationship between the "new" facts in the proffered MDL declarations and the new allegations in the PTAC. Consequently, the "new" facts do not establish a basis for reconsideration, and the motion for reconsideration is **DENIED** as to dismissal of the fraud and negligence claims.

## II.    RECONSIDERATION BASED UPON NEW LEGAL DEVELOPMENTS

Plaintiffs also argue for reconsideration of the Court's dismissal of their ECOA claim based upon a subsequent decision of the Ninth Circuit in *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204 (9th Cir., July 3, 2013). The court in *Schlegel* reversed a dismissal of an ECOA claim, holding that the facts alleged gave rise to a claim that the bank revoked the plaintiffs' credit for

3

purposes of 15 U.S.C. § 1691(d)(6). *Id.* at 1211. The facts alleged were that the plaintiffs had obtained a loan modification as part of their court-ordered bankruptcy proceedings, but the bank later informed plaintiffs that payments made under the modification were not sufficient, sent several default notices, and accelerated their loan payments. *Id.* at 1206-07. The court held that the default notices and acceleration were, effectively, a "revocation of credit." *Id.* at 1210-11.

Plaintiffs' reliance on *Schlegel* is unavailing. *Schlegel* does not change the law on which this Court relied in reaching its conclusion that the SAC did not allege a revocation or denial of credit under section 1691(d)(6), i.e. that the ECOA does not include "refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit." 15 U.S.C. §1691(d)(6); *see also* 12 C.F.R. § 202.2(c)(2)(ii) (stating that adverse action does not include "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account"). The allegations of the SAC, and the matters judicially noticeable, indicate that Plaintiffs were offered a modification, accepted that modification too late, BANA accepted some payments that may or may not constitute a waiver of the late acceptance, and BANA later repudiated the prior offer. This is not an adverse action under section 1691(d)(6), and nothing in *Schlegel* affects that decision. The motion for reconsideration of the dismissal of the ECOA claims is therefore **DENIED**.

### III.    REQUEST TO AMEND

Finally, Plaintiffs also seek to add claims for intentional infliction of emotional distress (IIED) against BANA and a violation of the FDCPA against Marix. The Court considers each in turn.

#### A.    Intentional Infliction of Emotional Distress Claim (IIED)

The request to add an IIED claim is both procedurally improper, since it was lumped in with the reconsideration request rather than separately noticed and set for hearing, and apparently futile. Leave to amend is ordinarily liberally granted unless the amendment is futile, would cause undue prejudice to the defendants, or is sought by plaintiffs in bad faith or with a dilatory motive. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Smith v. Pacific Properties and Dev. Corp.*,

4

358 F.3d 1097, 1101 (9th Cir. 2004).  However, when a district court has already granted plaintiffs leave to amend, its discretion is deciding subsequent motions to amend is "particularly broad."  *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (internal citation omitted).

Here, Plaintiffs were given several opportunities to correct the deficiencies in their complaint and to allege cognizable claims.  Their attempt to amend the complaint yet again by way of tacking on a request to add this claim in an advanced stage of the proceedings is procedurally improper, and prejudicial to Defendants.  Plaintiffs have used this motion for reconsideration, necessarily limited in its scope, as a means to make a moving target of the complaint.

On the merits of the IIED claim, Plaintiffs argue that BANA's "policies and procedures were intentionally designed to cause damage and distress to its borrowers." (Motion at 9.) Plaintiffs argue that they were "misled and on the eve of foreclosure required to file suit to mitigate the damage and stress caused by [BANA's] conduct."  (*Id.*)  The IIED claim in the PTAC alleges that BANA, "pursuant to its policies, patterns and practices enticed" Plaintiffs to apply for a loan modification it did not intend to perform and then claimed to have lost the modification papers, which conduct was "intentional and malicious."   (PTAC ¶¶ 70, 71.)

To plead an IIED claim, a plaintiff must allege "that (1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." *Ross v. Creel Printing & Publ'g. Co., Inc.*, 100 Cal. App. 4th 736, 744-45 (2002) (citation omitted).  Plaintiffs' new allegations in the IIED claim itself are too vague and conclusory to state a plausible claim for relief.  Further, the new allegations in the preamble of the proposed amended complaint (PTAC ¶¶ 1-3) offer significantly different facts about Plaintiffs' interactions with BANA than they presented previously, with no explanation about why Plaintiffs' delay in offering those allegations should be excused and amendment should be permitted.

**B.     Fair Debt Collection Practices Act Claim ("FDCPA")**

As to the FDCPA claim, Plaintiffs' PTAC alleges that Marix, acting as a debt collector, falsely represented that Plaintiffs were in default and falsely issued a notice of default and notice of

5

trustee's sale, which were unfair and unconscionable means to collect a debt under 15 U.S.C. § 1692f. Plaintiffs' request to amend to add this claim is, essentially, an unsupported motion for reconsideration, since the Court previously rejected this same argument from Plaintiffs.

In opposition to the first motion to dismiss, Plaintiffs argued that they could state an FDCPA claim. (Oppo., Dkt. No. 100, at 13.) The Court, in granting the motion to dismiss, rejected Plaintiffs' argument, noting both that Plaintiffs had not pleaded an FDCPA theory and that the claim appeared to be meritless. (Order Granting Motions To Dismiss With Leave To Amend, Dkt. No. 108, at 10-11.) As the Court stated therein, "assignees and servicers on mortgage loans are not 'debt collectors' for purposes of the FDCPA." *Id.* at 10, citing *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1224 (E.D. Cal. 2010).

Plaintiffs elected not to plead an FDCPA claim in the Second Amended Complaint. (Dkt. No. 111.) And while they again argued an FDCPA theory in opposition to the motion to dismiss the Second Amended Complaint, the Court rejected that argument and dismissed all claims against Marix other than for declaratory relief. (Order, Dkt. No. 126, at 10-11.)

Plaintiffs offer no basis for reconsideration of this ruling. The motion to amend is therefore **DENIED**.

### IV. CONCLUSION

Accordingly, the Motion for Reconsideration, and to amend to add IIED and FDCPA claims is **DENIED**.

This terminates Docket No. 136.

**IT IS SO ORDERED**.

**Date: November 6, 2013**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**